UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENTUCKIANA HEALTHCARE, LLC | ) | CHAPTER 11 |
| | ) | |
| Debtor | ) | CASE NO. 10-34230 |
| | ) | |

**NUNC PRO TUNC MOTION TO GRANT LIENS
AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS
PURSUANT TO SECTIONS 105, 363, AND 364 OF THE BANKRUPTCY CODE**

Comes the Debtor, Kentuckiana Healthcare, LLC ("KHC" or "Debtor"), by counsel, and respectfully requests that the Court enter an order pursuant to sections 105(a), 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2002, 4001(c) and 9014 (the "Bankruptcy Rules") authorizing the Debtor to incur post-petition financing on a secured superpriority administrative expense basis (the 'Motion"). In support of the Motion, the Debtor respectfully represents as follows:

**Introduction**

1. On August 10, 2010 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to manage its property and operate its business pursuant to §§ 1107(a) and 1108.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The statutory predicates for the relief requested are Sections 105, 363, 365 and 1146 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

## Background

4. KHC is a limited liability company organized under the laws of the Commonwealth of Kentucky which manages, pursuant to certain "triple-net" management and operations transfer agreements with Brownsburg Healthcare Center, LLC, Castleton Healthcare Center, LLC and Plainfield Healthcare Center, LLC, three (3) skilled nursing home facilities in Indiana (the "Facilities"). As such, KHC is a health care business as that term is defined in § 101(27A). As of the Petition Date, KHC employs approximately 430 individuals.

5. KHC has no secured creditors.

6. Since the Petition Date, several suppliers have demanded COD payment from the Facilities. While the Facilities are profitable, this requirement has hampered the cash flow of the Facilities.

7. As a result, the Plainfield facility became unable to meet its payroll and payroll tax obligations due at noon on August 20, 2010. The principal of the Debtor, Frank Littriello ("Littriello"), became aware of this fact the morning of August 20, 2010.

8. In order to cover the shortfall in Plainfield's payroll and taxes, Littriello withdrew $60,000.00 from his home equity line of credit and deposited that amount into the Plainfield account (the "DIP Financing"). As a condition of incurring the secured debt on his residence, Littriello demanded that the DIP Financing be on a secured basis.

9. An immediate need existed for KHC to obtain financing in order to preserve the value of its business and assets as debtor-in-possession under Chapter 11 of the Bankruptcy Code and to minimize the disruption of the Debtor as a going concern. KHC was unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a super-priority administrative expense

priority pursuant to Section 364(c)(1) of the Bankruptcy Code; and other than the financing from Littriello, the Debtor was unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of the Debtor's estate pursuant to Section 364(c)(2) and (c)(3) of the Bankruptcy Code. The relief sought in the Motion is necessary to avoid immediate and irreparable harm and injury to the Debtor's estate.

10. Without the support of the DIP Financing, Debtor would not have been able to sustain its current operations due to ongoing cash needs.

## RELIEF REQUESTED

11. By this Motion, the Debtor requests the entry of an order (the "Order") authorizing the Debtor to: (a) obtain post-petition DIP Financing, and (b) grant liens and superpriority administrative expense status to Littriello pursuant to sections 363 and 364 of the Bankruptcy Code.

12. The Debtor requests that the Order set a reasonable rate of interest for the DIP Financing, of an amount not less than 6.894% per annum, the interest rate incurred by Littriello, and that the Debtor is authorized to pay Littriello interest on the DIP Financing on a monthly basis without further order of the Court.

## APPROVAL OF THE POST-PETITION LENDING FACILITY IS WARRANTED UNDER THE CIRCUMSTANCES

13. The Debtor submits that ample justification exists for the approval of the proposed DIP Financing under section 364 of the Bankruptcy Code. An immediate and critical need existed for the Debtors to obtain funds from DIP Lender in order to continue the operation of the Facilities.

14. Section 364(c) of the Bankruptcy Code authorizes a debtor-in-possession to obtain post-petition credit:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(l) of this title as an administrative expense, the court, after notice and a hearing, may

3

authorize the obtaining of credit or the incurring of debt —

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

15. Courts have articulated a three-part test to determine whether a debtor-in-possession is entitled to financing under section 364(c) of the Bankruptcy Code: whether (a) the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim; (b) the credit transaction is necessary to preserve the assets of the estate; and (c) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. *See, e.g., In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991); *In re Ames Dep't Stores. Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); *In re Crouse Group. Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

24. The Debtor was unable to obtain credit that is not secured and has not been granted superpriority administrative claim status. Under these circumstances, and given the Debtor's current financial status and the immediate need for funds when the Debtor incurred the DIP Financing, the Debtor believes that Littriello would not provide financing to the Debtor, other than on a secured and superpriority basis. The Debtor can show "by a good faith effort that credit was not available without" the protections of section 364(c)." *Bray v. Shenandoah Federal Say, and Loan Ass'n (In re Snowshoe Co.* 789 F.2d 1085, 1088 (4th Cir. 1986) ("[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); See *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992); *In re Sky Valley*, Inc., 100 B.R.

107, 113 (Bankr. N.D. Ga. 1988) (where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing."), aff'd sub nom., *Anchor Say. Bank FSB v. Sky Valley, Inc.*, 99 B. R. 117, 120 n.4 (N.D. Ga. 1989); see also *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996) (holding that debtor was entitled to relief under section 364(c) after providing evidence that only one entity of several solicited would provide the debtor with post-petition financing upon the condition of superpriority for such loans).

25. Without the DIP Financing, the Debtor would not have been able to assure the continued operation of the Debtor's business in a manner that will avoid irreparable harm to the Debtor and its estate. The ability of the Debtor to finance the Facilities' operations and the availability to the Debtor of sufficient working capital and liquidity through the incurrence of new indebtedness and other financial accommodations are necessary to the confidence of the Facilities' vendors and suppliers of other goods and services, to their patients and employees and to the preservation and maintenance of the going concern value of the Debtor's estate. For these reasons, access to credit under the DIP Financing was critical to the Debtor's operation and necessary to preserve the assets of the Debtor's estate for the benefit of its creditors.

26. Furthermore, the Debtor submits that this Court should defer to the Debtor's business judgment which led the Debtor to determine that the terms of the DIP Financing are reasonable under the circumstances and should be approved by this Court. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Cob. 1985*)* ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus.. Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same); *In re Hamilton Square Associates*, No. 91-14720S, 1992 WL 98294, at *1 (Bankr.

5

E.D.Pa. May *5* 1992) (holding that a "debtor in possession's business judgement must be accepted if reasonable."). As one court has noted, "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311(5th Cir. 1985).

27. In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *See In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845*,* 849 (Bankr. W.D. Pa. 1987) (holding that "the court should not interfere with or second-guess the debtor's sound business judgement unless and until evidence is presented that establishes that the debtor's decision was one taken in bad faith or in gross abuse of its retained business discretion."); *See also In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Curlew Valley,* 14 B.R. at 513-14 (footnotes omitted); *In re Lynx Transport, Inc.,* No. 98-36433DAS, 1999 WL 615366, at *3 (Bankr. E.D.Pa. Aug. 11, 1999) (holding that "a debtor- in-possession (DIP) is authorized to make its own independent business judgements.").

28. The terms and conditions of the DIP Financing are identical to the terms pursuant to which Littriello borrowed the funds made a part thereof. Such terms were negotiated in good faith and at arms length by Littriello and U.S. Bank and, accordingly, the Debtor believes that any credit extended and loans made to the Debtor under the DIP Financing should be deemed to have been extended in good faith, within the meaning of section 364(e) of the Bankruptcy Code.

## **MODIFICATION OF THE AUTOMATIC STAY**

29. Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing

of a bankruptcy petition pursuant to the Bankruptcy Code. The Order contemplates a modification of the automatic stay (as necessary) to permit the Debtor to grant the applicable liens and to perform the obligations specified as part of the DIP Financing. Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities, and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

## CONCLUSION

30. The Debtor has exercised sound business judgment in determining that the DIP Loan is appropriate and has satisfied the legal prerequisites to borrow under the DIP Financing. The terms of the DIP Financing are fair and reasonable and are in the best interests of the Debtor's estates. Accordingly, the Debtor requests the Court retroactively grant authority to enter into the DIP Financing and to borrow funds from Littriello on the secured administrative "superpriority" basis described above, pursuant to section 364(c) of the Bankruptcy Code, and take the other actions contemplated and requested herein.

**WHEREFORE,** the Debtor respectfully requests that this Court enter the Order:

A. Pursuant to sections 105(a), 363, 364(c) and 105(a) of title 11 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(c), and 9014 authorizing the Debtor to incur post-petition financing on a secured superpriority administrative expense basis on the terms described in this Motion and the Order;

B. That such Order be retroactive to August 20, 2010; and

C. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ David M. Cantor
DAVID M. CANTOR
SEILLER WATERMAN LLC
Meidinger Tower - 22nd Floor
462 S. Fourth Street
Louisville, Kentucky 40202
Telephone: (502) 584-7400
Facsimile: (502) 583-2100
E-mail: cantor@derbycitylaw.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

It is hereby certified that on August 30, 2010, true and correct copies of the foregoing Nunc Pro Tunc Motion to Grant Liens and Superpriority Administrative Expense Status Pursuant to Sections 105, 363, and 364 of the Bankruptcy Code, and tendered Order were served by U.S. mail to the all Creditors as designated in Debtor's Petition.

/s/ David M. Cantor
DAVID M. CANTOR

G:\doc\DMC\Kentuckiana Healthcare\Pldgs\Mot Borrow nunc pro tunc.wpd